IN THE UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MISSOURI SOUTHEASTERN DIVISION

| | |
|---|---|
| JAMES W. MATHENA, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | No. 1:19-CV-125 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by James W. Mathena, a person in federal custody. Mathena alleges that his attorney, Assistant Federal Public Defender Michael A. Skrien, rendered ineffective assistance of counsel at his sentencing hearing by failing to challenge his classification as an Armed Career Criminal under 18 U.S.C. § 924(e) (the Armed Career Criminal Act "ACCA"). In his sole claim for relief, Mathena specifically asserts that his Texas robbery conviction should not have qualified as an ACCA predicate "violent felony." For the reasons stated below, this Court will deny Mathena's petition without an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2017, law enforcement officers were dispatched to a residence in Cape Girardeau, Missouri after the Petitioner, James W. Mathena, assaulted and threatened to kill his elderly parents. Case No. 1:18-CR-006-SNLJ, Doc. # 34

1

(Presentence Investigation Report, hereafter "PSR") ¶ 12. Upon arrival, officers found Mathena's parents hiding in the bushes on the side of their house. *Id*. Mathena's parents advised officers that Mathena pointed a handgun at them and threatened to burn down their house. *Id*. Mathena fled from the scene before officers arrived, but he was located standing outside another residence a short time later. *Id.* When officers began approaching him, Mathena ran into the residence and barricaded himself inside. *Id*. Officers repeatedly instructed Mathena to come outside, but he refused to comply. *Id*. Officers then formed a perimeter around the house. After a standoff lasting approximately three hours, Mathena finally emerged from the residence and surrendered. *Id*. A shotgun was found during a search of the residence. *Id*. Officers later recovered a .22 caliber pistol - the handgun Mathena used to threaten his parents – concealed under the bed of an acquaintance of Mathena. PSR ¶ 13. A criminal records check revealed Mathena had been convicted of numerous felony offenses. PSR ¶ 15.

On January 18, 2018, a grand jury in the Eastern District of Missouri returned an Indictment charging Mathena with being a previously convicted felon in possession of firearms (the shotgun and the .22 caliber pistol ) in violation of 18 U.S.C. § 922(g)(1). Doc. ## 1, 2. Assistant Federal Public Defender (AFPD) Michael A. Skrien was subsequently appointed to represent Mathena in the case. Doc. ## 6, 14. After waiving his right to file pretrial motions, Mathena appeared before this Court on April 24, 2018 and entered a guilty plea to the Indictment pursuant to a written guilty plea agreement. Doc. ## 18, 22, 28, 29. In the agreement, the parties expressly acknowledged the possibility that Mathena may be subject to an enhanced sentence under 18 U.S.C. § 924(e) (the

2

Armed Career Criminal Act "ACCA"). Doc. # 29 (Plea Agreement) at 4-6. The Plea Agreement specifically provided:

> In certain situations under 18 U.S.C. § 924(e) (the "Armed Career Criminal Act"), the defendant may be subject to a mandatory minimum sentence of fifteen (15) years and a maximum sentence of life imprisonment. The defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel, and will not be able to withdraw the guilty plea if the Court determines the above-referenced statute applies to the defendant's sentence. However, both parties retain the right to litigate whether 18 U.S.C. § 924(e) applies to the defendant's sentence.

Plea Agreement at 4. As part of the agreement, both parties reserved the right to appeal any and all sentencing issues. *Id.* at 7. This Court accepted Mathena's guilty plea and ordered the United States Probation Office to prepare a Presentence Investigation Report (PSR) prior to sentencing.

The PSR recommended that Mathena did indeed qualify as an Armed Career Criminal under 18 U.S.C. § 924(e). The PSR specifically identified the following three ACCA predicate convictions: (1) a conviction for Robbery by Threats from the District Court of Bexar County, Texas, in Docket No. 87-CR-0952-B; (2) a conviction for Distribution of Methamphetamine from the United States District Court for the Western District of Texas, for an offense occurring on March 14, 1988, in Docket No. SA-88-CR-123; and (3) a conviction for Aiding and Abetting Assault on a Federal Officer With a Dangerous Weapon from the United States District Court for the Western District of Texas, for an offense occurring on March 13, 1988, in Docket No. SA-88-CR-123. *See* PSR, ¶¶ 28, 34, and 35. The PSR included language from the charging

documents underlying these convictions. Court records of Mathena's Texas robbery conviction reflected that:

> on January 2, 1987, in Bexar County, Texas, the defendant did then and there intentionally and knowingly threaten and place R.B. in fear of imminent bodily injury and death by using and exhibiting a deadly weapon, namely: a firearm, while the defendant was in the course of committing theft of property, namely: one identification bracelet from R.B., and said acts were committed by the defendant with the intent to then and there obtain control of the said property.

PSR ¶ 34. As an Armed Career Criminal, the offense level was determined to be 34 pursuant to U.S.S.G. § 4B1.4(b)(3)(A). PSR ¶ 28. A three-level reduction for acceptance of responsibility resulted in a total offense level of 31. PSR ¶ 31. The PSR further determined that Mathena was in criminal history category VI, resulting in an advisory guideline imprisonment range of 188-235 months. PSR ¶ 44, 76. Neither party filed objections to the PSR. *See* Doc. ## 32, 37.

On July 30, 2018, the parties appeared before this Court for a sentencing hearing. After confirming there were no objections to the contents of the PSR, this Court formally adopted its findings and concluded Mathena qualified as an Armed Career Criminal. This Court imposed a within-guideline sentence of 210 months' imprisonment, to be followed by four years of supervised release. Doc. ## 38-40. Mathena did not appeal his conviction or sentence.

Mathena has now filed a motion under 28 U.S.C. §. 2255, claiming AFPD Skrien rendered ineffective assistance of counsel by failing to object to his status as an Armed Career Criminal. Mathena specifically asserts that his Texas robbery conviction does not

4

qualify as a "violent felony" under the ACCA. Mathena's claim is without merit.

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In order to prevail on a claim alleging ineffective assistance of counsel, the Movant has the burden of proving his or her claims for relief by a preponderance of the evidence. The Supreme Court of the United States set forth the standard to apply in such cases in *Strickland v. Washington*, 466 U.S. 668 (1984), holding that a Movant must plead and prove two related but independent issues. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.*

Regarding the first prong of the *Strickland* test, the proper standard for attorney performance is that of reasonably effective assistance. As the Supreme Court explained, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Recognizing the complexity and variety of issues that defense counsel must confront and address in any given case, the Supreme Court refused to adopt a standard that would implement an exhaustive set of detailed guidelines to evaluate attorney performance. Instead, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. *Id.* The Supreme Court

instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (citations and internal quotation marks omitted). The Supreme Court further instructed that a reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

The second prong of the *Strickland* test requires a Movant to prove that he or she was prejudiced by counsel's deficient performance. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id*. at 691. The Supreme Court observed "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Thus, it is simply not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In evaluating an ineffectiveness claim, a reviewing court is not required to address both prongs of the *Strickland* test if the defendant makes an insufficient showing on one. As the Supreme Court instructed, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. "The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed." *Id*. at 697. The Eighth Circuit has described the two-fold *Strickland* test as A[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000). Accordingly, if a reviewing court determines the alleged errors would have had no impact on the result of the proceeding, the claim of ineffectiveness must fail.

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances." *Fields*, 201 F.3d at 1027 (quoting *Strickland, 466 U.S. at 688*). Counsel's challenged conduct is viewed as of the time of his

7

representation and courts will "avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. Again, a reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

### **Need for evidentiary hearing and burden of proof**

A motion filed under 28 U.S.C. §. 2255 should be denied without an evidentiary hearing when the court records conclusively show that the movant is not entitled to relief. The statute provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is

conclusively refuted as to the alleged facts by the files and the records of the case. *Id*. at 225-26. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *United States v. Oldham,* 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, would entitle the movant to relief. *Payne v. United States,* 78 F.3d 343, 347 (8th Cir. 1996). When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

### **MATHENA'S TEXAS ROBBERY CONVICTION IS AN ACCA "VIOLENT FELONY"**

The Armed Career Criminal Act (ACCA) mandates that a person convicted of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) is subject to an enhanced sentence – including a mandatory minimum sentence of 15-years imprisonment and a maximum sentence of life - if such person has three or more convictions for either "violent felonies" or "serious drug offenses." 18 U.S.C. § 924(e). As relevant here, the term "violent felony" includes any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. §

9

924(e)(2)(B)(i) (commonly referred to as the "force clause"). In determining whether a prior conviction qualifies as a violent felony under the ACCA, the court considers the legal elements of the crime, not the particularities of how the crime was committed on a specific occasion. *United States v. Brown*, 550 F.3d 724, 728 (8th Cir. 2008) (citing *Begay v. United States,* 553 U.S. 137 (2008)). In other words, sentencing courts must apply a "categorical approach," looking only to the elements of the offense as defined in the statute of conviction rather than the facts underlying the conviction. *See, e.g., United States v. Rice,* 813 F.3d 704, 705 (8th Cir. 2016).

When the elements of the statute of conviction are broader than the generic offense, however, the court must then determine if the statute is "divisible." *See Shepard v. United States*, 544 U.S. 13 (2005). A statute is "divisible" if it "comprises multiple, alternative versions of the crime." *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013). If at least one of the alternative versions qualifies as a crime of violence while another does not, courts may then employ what has come to be known as the "modified categorical approach." *Id.* This approach permits sentencing courts to consult a limited class of documents, such as charging instruments and jury instructions, to determine which alternative formed the basis of the defendant's conviction. *Shepard*, 544 U.S. at 26. If the *Shepard*-approved documents establish that a defendant was convicted of a crime satisfying the elements under the force clause, then such a conviction will qualify as a violent felony under the ACCA.

In his motion under 28 U.S.C. §. 255, Mathena alleges AFPD Skrien rendered ineffective assistance of counsel by failing to challenge his classification as an Armed

10

Career Criminal. Mathena specifically contends that his prior Texas conviction for Robbery by Threats is not an ACCA predicate "violent felony."[1] Mathena's claim is without merit.

Because Mathena did not object to the PSR's determination that he was an Armed Career Criminal before this Court at sentencing, it was unnecessary for the government to introduce documentary evidence at the sentencing hearing to establish that he qualified as such. *See, e.g., United States v. Stymiest*, 581 F.3d 759, 768 (8th Cir. 2009) (government need not introduce documentary evidence at sentencing hearing if defendant fails to object to factual statements in PSR establishing predicate convictions). Nonetheless, the government has attached the relevant court records of Mathena's Texas robbery conviction to its respoonse. *See* Attachment A. The charging instrument titled "True Bill of Indictment" provides as follows:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, *** do present in and to said Court that in the County and State aforesaid, and interior to the presentment of this indictment, and on or about the 2ND day of January, A.D., 1987, JAMES WILLIAM MATHENA, hereinafter called defendant, did then and there intentionally and knowingly threaten and place [Victim], hereinafter called complainant, in fear of imminent bodily injury and death, by using and exhibiting a deadly weapon, namely: A FIREARM, while the said defendant was in the course of committing theft of property, namely: ONE (1) IDENTIFICATION BRACELET from said complainant, the owner of said property, without the effective
>
> consent of the said complainant, and said acts were committed by the said defendant with the intent then and

---

[1] Mathena does not dispute that his convictions for distributing methamphetamine and assaulting a federal officer qualify as ACCA predicate convictions.

11

> there to obtain and maintain control of the said property;
> against the peace and dignity of the State.

Attachment A at A1. The docket entries reflect that Mathena appeared in court with an attorney on July 13, 1987 and pled guilty to the offense "as charged in the indictment." *Id*. at A3.

The Texas aggravated robbery statute that formed the basis of Mathena's conviction is found at Texas Penal Code § 29.03, which provides:

> (a)   A person commits [aggravated robbery] if he commits robbery as defined in Section 29.02, and he:
>
> > (1) causes serious bodily injury to another;
> >
> > (2) uses or exhibits a deadly weapon; or
> >
> > (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
> >
> > > (A) 65 years of age or older; or
> > >
> > > (B) a disabled person.

Texas Penal Code § 29.03(a).   The Texas simple robbery statute, which is a lesser offense incorporated into the first paragraph of the aggravated robbery statute, provides as follows:

> (a)   A person commits [simple robbery] if, in the course of committing theft … and with intent to obtain or maintain control of the property, he:
>
> > (1) Intentionally, knowingly, or recklessly causes bodily injury to another, or
> >
> > (2)  Intentionally or knowingly threatens or places another in fear of

12

imminent bodily injury or death.

Texas Penal Code § 29.02(a).

Mathena's claim is foreclosed by *United States v. Hall*, 877 F.3d 800, 807-808 (8th Cir. 2017), where the Eighth Circuit held that simple robbery in violation of Texas Penal Code § 29.02– a lesser crime than the offense at issue here - "has as an element the use, attempted use, or threatened use of physical force against the person of another." Because a conviction for Texas simple robbery "requires either actual bodily injury or a threat thereof," the *Hall* Court concluded such a conviction categorically qualifies as an ACCA predicate violent felony under the force clause. *Id*. at 807.

Although *Hall* conclusively resolves this case, it is worth noting that the Fifth Circuit has extensively examined both the Texas aggravated robbery statute and the lesser simple robbery statute. In *United States v. Lerma*, 877 F.3d 628, 634-36 (5th Cir. 2017), the Fifth Circuit definitively held that a conviction for aggravated robbery while using or exhibiting a deadly weapon in violation of Texas Penal Code § 29.03(a)(2) – the same provision Mathena pled guilty to violating - is indeed a violent felony under the force clause of the ACCA. *See also United States v. Mitchell*, --- Fed.Appx. ---, 2019 WL 4070686 (5th Cir. August 28, 2019) (per curium) (unpublished) (reaffirming holding in *Lerma*). And earlier this year, in *United States v. Burris*, 920 F.3d 942 (5th Cir. 2019), the Fifth Circuit held that simple robbery in violation of Texas Penal Code § 29.02 "has as an element the use, attempted use, or threatened use of physical force against the person of another." The *Burris* Court reached this conclusion after a thoughtful and thorough examination of the holding in *Stokeling v. United States*, 139 S.Ct. 544, 553 (2019),

13

where the Supreme Court discussed at length the level of force required under the ACCA. The Fifth Circuit ultimately concluded – in line with the holding of the Eighth Circuit in *Hall* - that *all* convictions under Texas' lesser simple robbery statute categorically qualify as an ACCA violent felony. *Burris*, 920 F.3d at 953-58.

The well-reasoned opinions from the Eighth and Fifth Circuits demonstrate that any objections related to Mathena's Texas robbery conviction would not have been successful. In fact, this Court would have been *required* to overrule such an objection under the binding circuit precedent in *Hall*. AFPD Skrien certainly did not render ineffective assistance of counsel by failing to raise a non-meritorious objection.

## CONCLUSION

For the foregoing reasons, this Court denies Mathena's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Mathena has not made a substantial showing of the denial of a federal constitutional right.

Dated this 20th day of August, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE